IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TATYANA MYKHAYLYCHENKO,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>Defendant. | Civil No. 23-00483 MWJS-RT<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**INTRODUCTION**

Plaintiff Tatyana Mykhaylychenko appeals from the denial of her application for Social Security disability benefits. She argues that the Commissioner—acting through an Administrative Law Judge, or "ALJ"—made a series of analytical errors in considering the severity of her disabilities and her ability to work in light of those disabilities.

While it is conceivable this Court might not have reached the same conclusion on *de novo* review, the only question on appeal is whether substantial evidence supports the ALJ's decision. Because the ALJ's decision is so supported, the Court AFFIRMS.

//

//

## BACKGROUND

1.  Social Security regulations "set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  The steps are:

> (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the claimant's impairment severe?  (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations?  (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25 (citing 20 C.F.R. § 404.1520).

In broad terms, the process works as follows.  If a claimant is presently working in a substantially gainful activity (step one) or is unburdened by any severe impairment (step two), then the analysis ends there, and the claimant's application must be denied.  If, on the other hand, the claimant is not so employed and does have severe impairments, the analysis proceeds to step three.  At step three, if the claimant has any listed impairment, then their claims are automatically granted.  If not, the ALJ turns to steps four and five.

For steps four and five, an ALJ determines a claimant's residual functional capacity (RFC), which is a measure of "the most [one] can still do despite [one's] limitations."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (quoting

20 C.F.R. § 416.945(a)(1)).  The RFC "is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work."  *Id.*  Moreover, an ALJ may "rely on a vocational expert's testimony to find that there are jobs that the claimant can perform [in light of her RFC] and that there are enough of those jobs in the national economy."  *Conway v. O'Malley*, 96 F.4th 1275, 1278 (9th Cir. 2024) (citing *Leach v. Kijakazi*, 70 F.4th 1251, 1254 (9th Cir. 2023)).

2.  In this case, Mykhaylychenko filed an application for Social Security disability insurance benefits.  She argued that she has been disabled since July 2020 as a result of a number of conditions:  Sjogren's syndrome; cervical and lumbar degenerative disk disease; colon cancer, status post (s/p) resection; breast cancer, s/p chemotherapy and mastectomy; obesity; migraine headaches; peripheral neuropathy; rheumatoid arthritis; bilateral chondromalacia patellae; thyroid disorder; and IBD vs. gastritis vs. hiatal hernia vs. reflux esophagitis.  ECF No. 1, at PageID.2.  She also contended that lymphocytic colitis was a "new condition causing a deleterious effect" on her functioning.  ECF No. 12, at PageID.1169 (Opening Br. (OB) at 8).

The ALJ held an administrative hearing on December 8, 2022, at which both Mykhaylychenko and a vocational expert testified.  Following the hearing, the ALJ

denied Mykhaylychenko's application by written decision on December 23, 2022. ECF No. 1, at PageID.3.

In that written decision, the ALJ proceeded through the sequential process. At step one, the ALJ found that Mykhaylychenko was not presently working in substantially gainful activity. ECF No. 8-3, at PageID.40 (Admin. R. (AR) at 18). At step two, the ALJ found that Mykhaylychenko suffered from multiple severe impairments—though he did not specifically consider whether her lymphocytic colitis was severe. *Id.* at PageID.40-42 (AR at 18-20). At step three, the ALJ found that none of Mykhaylychenko's impairments matched up with a listed impairment. *Id.* at PageID.42-44 (AR at 20-22).

Turning to step four, the ALJ found that Mykhaylychenko had the RFC to perform sedentary work, subject to, among other things, the additional limitation that Mykhaylychenko "can frequently handle and finger with the bilateral upper extremities." *Id.* at PageID.44 (AR at 22). In making these findings, the ALJ noted that he had considered Mykhaylychenko's testimony about the severity of her symptoms, in which she had expressed more severe restrictions on her ability to perform tasks—including that she was much more limited in her use of her hands and that her diarrhea condition required her to visit a bathroom every five to ten minutes. *Id.* at PageID.45 (AR at 23). Although the ALJ agreed that Mykhaylychenko's "medically determinable impairments can reasonably be

4

expected to have caused" her symptoms, he nonetheless found that

Mykhaylychenko's "further statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with evidence." *Id.*[1]

In the end, the ALJ found that Mykhaylychenko was not disabled because

she was still able to perform past relevant work as a receptionist. *Id.* at PageID.51

(AR at 29). In reaching this conclusion, the ALJ relied on the testimony of the

vocational expert, who had opined that an individual with Mykhaylychenko's

RFC—including, most importantly, an ability to perform frequent handling and

fingering with her hands—could still perform past work as a receptionist. *See id.*

The Appeals Council thereafter denied Mykhaylychenko's request for

review of the ALJ's decision, making the ALJ's decision the final decision of the

Commissioner. ECF No. 1, at PageID.3. Mykhaylychenko's appeal followed, and

this Court has jurisdiction under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either

not supported by substantial evidence or is based upon legal error." *Luther v.*

---

[1]     As the Ninth Circuit has explained, "ALJs commonly use the phrase 'not entirely consistent' the same way the ALJ did in this case—to mean that the claimant's testimony is *inconsistent* with other evidence in the record." *Smartt v. Kijakazi*, 53 F.4th 489, 499 n.2 (9th Cir. 2022). That said, as the Ninth Circuit has also explained, ALJs "might consider replacing the phrase 'not entirely consistent' with simply 'inconsistent'" to avoid misunderstandings. *Id.*

*Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).  And while "substantial" means

"more than a mere scintilla," it requires "only such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Woods v.*

*Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).  This standard "is not

high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and "if evidence exists to

support more than one rational interpretation," the Court "must defer to the [ALJ's]

decision," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 & n.1 (9th

Cir. 2004).  Ultimately, the "ALJ is the final arbiter with respect to resolving

ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

(9th Cir. 2008).

These review standards are deferential because, "[f]or highly fact-intensive

individualized determinations like a claimant's entitlement to disability benefits,

Congress places a premium upon agency expertise, and, for the sake of uniformity,

it is usually better to minimize the opportunity for reviewing courts to substitute

their discretion for that of the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1098 (9th Cir. 2014) (cleaned up).

## DISCUSSION

On appeal, Mykhaylychenko contends that the ALJ erred by failing to

consider one of her conditions—namely, her lymphocytic colitis—at step two of

the five-step sequential analysis.  She further contends that the ALJ failed to give

adequate reasons for rejecting her testimony about the severity of her diarrhea and hand use limitations.  Finally, Mykhaylychenko challenges the ALJ's reliance on the vocational expert's testimony in concluding she was capable of performing past work.  The Court considers each of these arguments in turn.

### A.      Any Error in Failing to Consider Mykhaylychenko's Lymphocytic Colitis at Step Two Was Harmless

Mykhaylychenko's first argument is that the ALJ made an error at step two of the five-step sequential process.  ECF No. 12, at PageID.1169-70 (OB at 8-9).

Recall that the question at step two is whether a claimant's impairments are severe.  If a claimant does not suffer from any severe impairments, then the analysis ends, and the claimant's application must be denied.  If an ALJ does find severe impairments, however, the ALJ must proceed to the next step in the sequential analysis.

In this case, Mykhaylychenko argues that the ALJ erred at step two because he failed to consider whether her lymphocytic colitis was severe.  A problem with this argument is readily apparent:  Mykhaylychenko's application did not fail at step two, because the ALJ found that *other* existing conditions were severe.  And the Ninth Circuit has explained that when an ALJ resolves step two in a claimant's favor, the claimant "could not possibly have been prejudiced."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1115

(9th Cir. 2012)).  "Any alleged error is therefore harmless and cannot be the basis for a remand."  *Id.*

But Mykhaylychenko rejoins that the error nonetheless did cause prejudice here.  As she puts it, "[t]he ALJ's failure to consider Tatyana's lymphocytic colitis was not harmless, where . . . the ALJ failed to properly consider the limitations posed by Tatyana's lymphocytic colitis in her RFC assessment."  ECF No. 12, at PageID.1170 (OB at 9).  Put differently, Mykhaylychenko's argument is that the ALJ did not properly assess her RFC because he did not take her lymphocytic colitis into account.  And as it relates to step two in particular, Mykhaylychenko appears to be suggesting that the ALJ's failure to specifically list lymphocytic colitis at that earlier step played some role in leading to his mistake at the latter step.

The record does not bear out these arguments.  For one thing, Mykhaylychenko herself later concedes that "[a]lthough the ALJ never acknowledged [her] testimony or evidence that she suffers from lymphocytic colitis, the ALJ did acknowledge [her] testimony regarding her major symptom of the lymphocytic colitis, which was her diarrhea."  *Id.* at PageID.1177 (OB at 16); *see also* ECF No. 14, at PageID.1191 (Answering Br. (AB) at 1) (arguing that "in assessing Plaintiff's residual functional capacity, the ALJ considered her complaints of 'gastrointestinal symptoms such as diarrhea that [she claimed]

required her to visit the bathroom every 5-10 minutes'" (quoting ECF No. 8-3, at

PageID.45 (AR at 23)).  While Mykhaylychenko takes issue with *how* the ALJ

assessed these symptoms—an issue addressed below—the record does not indicate

that the ALJ failed to consider these symptoms at all.  And if the ALJ considered

the *symptoms* of Mykhaylychenko's lymphocytic colitis, then it is harmless error

that the ALJ did not attach the *label* of lymphocytic colitis to those symptoms.  At

the least, Mykhaylychenko has offered no reason why the omission of this label

could have caused her prejudice under the circumstances of this case.

Accordingly, Mykhaylychenko has not shown that the ALJ prejudicially

erred at step two.

**B.      Substantial Evidence Supports the ALJ's Treatment of Mykhaylychenko's Severity Testimony**

Mykhaylychenko separately argues that the ALJ erred in rejecting her

testimony about the severity of her symptoms.  ECF No. 12, at PageID.1175-86

(OB at 14-25).  She focuses here on two symptoms in particular:  her diarrhea and

her limitations in using her hands.

1. As noted above, the ALJ acknowledged Mykhaylychenko's testimony

that her "gastrointestinal symptoms such as diarrhea . . . required her to visit a

bathroom every 5-10 minutes," and caused a "need for excessive bathroom usage."

ECF No. 8-3, at PageID.45 (AR at 23).  The ALJ considered "the consistency" of

this testimony, along with Mykhaylychenko's other statements, "with the evidence

of record." *Id.* But the ALJ concluded that Mykhaylychenko's "statements

concerning the intensity, persistence and limiting effects of [her] symptoms [were]

not entirely consistent with evidence." *Id.* In rejecting Mykhaylychenko's

testimony about her gastrointestinal symptoms, the ALJ noted that "complaints of

this nature are rare in the record and largely limited to February 2021 . . . , and the

claimant[] frequently denied any problems with urination." *Id.* at PageID.46 (AR

at 24). According to Mykhaylychenko, this passage shows that the ALJ

misunderstood her symptoms (which involved diarrhea rather than problems with

frequent urination) and misread the record (which shows that her complaints about

diarrhea were not limited to February 2021).

As an initial matter, the ALJ did not err by considering Mykhaylychenko's

frequent denials of any problems with urination. Although diarrhea was her more

significant symptom, Mykhaylychenko did generally testify about a "need for

excessive bathroom usage." *Id.* at PageID.45 (AR at 23). It was not inappropriate

for the ALJ to narrow the issue by noting that it did not involve urinary problems.

And as for diarrhea specifically, Mykhaylychenko does persuasively argue

that the ALJ erred by characterizing her symptoms as largely limited to February

2021. Indeed, the Commissioner does not even respond to this factual argument,

and thereby concedes its merit.

10

Identifying an error in the ALJ's reasoning is not enough to prompt a reversal and remand, however.  As the Ninth Circuit has explained, "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, [the error] is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (cleaned up).

Here, the ALJ did not reject Mykhaylychenko's testimony solely on the ground that her complaints about diarrhea appeared (to the ALJ) to be limited to the February 2021 time period.  Rather, as the Commissioner correctly notes, the ALJ also found that Mykhaylychenko's testimony was contradicted by objective medical data.  ECF No. 14, at PageID.1194-95 (AB at 4-5).  This data included the fact that although Mykhaylychenko testified that she spent ten minutes in the bathroom approximately every thirty minutes, an endoscopy showed that her gastritis had only "very mild focal chronic inflammation."  ECF No. 8-8, at PageID.890 (AR at 863); *see also* ECF No. 8-3, at PageID.48 (AR at 26) (noting that Mykhaylychenko's "gastritis was found to be mild by upper endoscopy of July 2022").  The data also included the prior administrative findings of Stacy Lau, M.D., who had considered Mykhaylychenko's lymphocytic colitis and nonetheless concluded that she could still perform full-time work.  ECF No. 8-3, at PageID.49

11

(AR at 27); ECF No. 8-4, at PageID.190-92 (AR at 167-69); ECF No. 8-4, at

PageID.195-97 (AR at 172-74).  Although the Court might conceivably have

reached a different conclusion about Mykhaylychenko's credibility—and, by

extension, the severity of her symptoms—the Court is not authorized to substitute

its judgment for that of the ALJ.  The only question on appeal is whether the record

contains "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Woods*, 32 F.4th at 788 (quoting *Consol. Edison Co. of N.Y.*

*v. N.L.R.B.*, 305 U.S. 197, 217 (1938)).  Because the record in this case does

contain such evidence, the Court "must defer to the [ALJ's] decision."  *Batson*,

359 F.3d at 1193 & n.1.[2]

But Mykhaylychenko argues that a different legal principle precludes

deference to the ALJ here:  an ALJ is not permitted to reject a claimant's testimony

about the severity of her symptoms based solely on the lack of corroborating

objective medical data.  ECF No. 12, at PageID.1181 (OB at 20); ECF No. 15, at

PageID.1219 (Reply Br. (RB) at 11) (citing *Reddick v. Chater*, 157 F.3d 715, 722

---

[2]      In her reply brief, Mykhaylychenko argues that the ALJ "did not reject" her
testimony "based on his assessment of Dr. Lau's Prior Administrative Medical
Finding."  ECF No. 15, at PageID.1220 (RB at 12).  The Court disagrees.  The ALJ
expressly found that his RFC findings—which, as he had just explained, rejected
Mykhaylychenko's subjective testimony—were supported by the findings of Dr.
Lau and others.  *See* ECF No. 8-3, at PageID.49 (AR at 27) ("In determining the
claimant's residual functional capacity . . . the undersigned also expressly
contemplated the persuasiveness of the prior administrative medical findings and
medical opinion evidence of record . . . .").

(9th Cir. 1998)).  That unquestionably accurate legal principle does not advance

Mykhaylychenko's position, however, because the ALJ in this case did not fault

Mykhaylychenko's testimony for a lack of corroboration.  Instead, the ALJ found

that Mykhaylychenko's testimony was *contradicted* by the available objective

medical data.  *See supra* p. 5 and note 1.  And "[c]ontradiction with the medical

record is a sufficient basis for rejecting the claimant's subjective testimony."

*Carmickle*, 533 F.3d at 1161.

Finally, Mykhaylychenko argues that the ALJ should have done more to

"explain" why the objective medical data contradicted her testimony.  ECF No. 12,

at PageID.1181-82 (OB at 20-21).  It is true that an ALJ must offer "specific, clear,

and convincing reasons for discounting the claimant's subjective symptom

testimony."  *Ferguson*, 95 F.4th at 1199.  But it is also true that an ALJ's finding

need only be "sufficiently specific to allow a reviewing court to conclude [that an

ALJ] did not 'arbitrarily discredit a claimant's testimony.'"  *Bunnell v. Sullivan*,

947 F.2d 341, 345 (9th Cir. 1991) (en banc) (internal quotation marks omitted).

And in reviewing the ALJ's reasons, the Court need not be convinced; the question

is merely whether the ALJ's rationale is clear enough that it has "the power to

convince."  *Smartt*, 53 F.4th at 499.  That standard is met here.  The ALJ did not

merely summarize medical evidence.  He pointed to the medical data that he

believed contradicted Mykhaylychenko's testimony—which included the results of

13

an endoscopy and an assessment by Dr. Lau.  Because those reasons are

sufficiently clear and find adequate support in the record, the Court cannot second

guess them.

2.  Mykhaylychenko separately argues that the ALJ erred when he rejected

her testimony about the severity of her limitations on the use of her hands.

Specifically, Mykhaylychenko testified that she could use her hands for a few

hours, but then would have to rest them for thirty minutes to an hour.  ECF No. 12,

at PageID.1183 (OB at 22).

Here again, the ALJ found that Mykhaylychenko's testimony was

contradicted by the objective medical data.  As the ALJ explained, "although the

claimant . . . alleged substantial manipulative dysfunction . . . motor examinations

of record typically revealed 5/5 motor function of the upper extremities."  ECF No.

8-3, at PageID.45 (AR at 23).  The record amply supports this finding:  objective

testing frequently showed "full or near-full motor function in Plaintiff's arms and

hands."  ECF No. 14, at PageID.1194 (AB at 3-4) (citing ECF No. 8-8, at

PageID.470, 475, 478, 511-12, 515, 713, 726, 738, 849, 1020 (AR at 443, 448,

451, 484-85, 488, 686, 699, 711, 822, 993)).  The ALJ also relied on Dr. Lau's

findings, in which she concluded that Mykhaylychenko could perform full-time

work, including with frequent handling and fingering.  ECF No. 8-3, at PageID.49

(AR at 27).  And while Mykhaylychenko again argues that the ALJ improperly

14

faulted her for failing to corroborate her subjective testimony, the ALJ's decision is more faithfully read as having rejected her testimony because it was contradicted by that evidence.

Because the ALJ adequately explained his rejection of Mykhaylychenko's testimony about the severity of her symptoms, Mykhaylychenko's arguments to the contrary do not afford a basis for a remand.

**C.      The ALJ Properly Considered the Vocational Expert's Testimony**

Mykhaylychenko's final argument is that the ALJ erred in his consideration of the vocational expert's testimony.  According to Mykhaylychenko, the vocational expert's testimony was "self-contradictory" and neither the expert nor the ALJ purported to "resolve this conflict."  ECF No. 12, at PageID.1171 (OB at 10).

The contradiction, Mykhaylychenko says, is that the vocational expert gave conflicting answers to two separate hypothetical questions.  At the hearing, the ALJ asked a hypothetical in which a person is able to do "frequent[] handling and fingering with both upper extremities."  ECF No. 8-3, at PageID.74-75 (AR at 52-53).  In response to that hypothetical, the vocational expert concluded that such a person could perform past work as a receptionist.  *Id.* at PageID.75 (AR at 53).[3]

---

[3]      In response to the ALJ's separate hypothetical of a person who could only "occasionally" do handling and fingering with both upper extremities, the

Shortly after, however, Mykhaylychenko's hearing counsel asked about a

hypothetical person who would be "unable to use her hands for gross handling and

fine fingering bilaterally at least two hours of the workday." *Id.* at PageID.76 (AR

at 54). Hearing counsel then added, "So during those times, coworkers and

supervisors are going to have to accept *that she cannot use her hands because she*

*needs to rest them.*" *Id.* (emphasis added). In response to that hypothetical, the

vocational expert answered that such a person would not be able to do past work as

a receptionist.

Mykhaylychenko perceives the answers to these hypotheticals to be

contradictory. But that is not the case; the hypotheticals merely asked different

questions and produced different answers. The ALJ's hypothetical tracked what

the ALJ ultimately found to be Mykhaylychenko's RFC: an ability to frequently

"handle" (i.e., "seizing, holding, grasping, turning or otherwise working primarily

with the whole hand or hands") and "finger" (i.e., "picking, pinching, or otherwise

working primarily with the fingers"). ECF No. 14, at PageID.1197-98 (AB at 7-8).

In other words, she could perform each of two discrete functions for up to two

thirds of the day. The hypothetical of Mykhaylychenko's hearing counsel, by

contrast, hypothesized an individual who could not use her hands *at all* for two

___

vocational expert concluded that "[t]hat change in the handling and fingering
would prevent employment." ECF No. 8-3, at PageID.75 (AR at 53).

hours a day, as evidenced by hearing counsel's suggestion that the hypothetical

individual "cannot use her hands because she needs to rest them."  ECF No. 8-3, at

PageID.76 (AR at 54).  Because the ALJ did not find that Mykhaylychenko would

be completely unable to use her hands for two hours a day, the ALJ had no burden

to attempt to reconcile or reject the vocational expert's answer to hearing counsel's

hypothetical.

In support of her argument to the contrary, Mykhaylychenko cites *Hamilton*

*v. Commissioner of Social Security Administration*, 464 F. App'x 681 (9th Cir.

2012), but that case is readily distinguished.  In *Hamilton*, an ALJ found that as a

result of a claimant's disabilities, she "must be able to 'sit and stand at will.'"  *Id.*

at 682.  Nonetheless, in posing a hypothetical to the vocational expert, the ALJ

"did not accurately incorporate the at will sit/stand option," and "the light positions

the [vocational expert] pointed out to the ALJ [could not] accommodate" that

limitation "according to the [vocational expert]'s own testimony."  *Id.*  The Ninth

Circuit found the ALJ should have resolved that discrepancy, and remanded on that

basis.

In Mykhaylychenko's case, by contrast, the ALJ posed a question to the

vocational expert that properly included the limitations the ALJ ultimately found

Mykhaylychenko to suffer from.  The alternative hypothetical of

Mykhaylychenko's hearing counsel introduced a limitation—*i.e.*, a complete

inability to use her hands for two hours a workday—that the ALJ did not accept. The ALJ was not required to engage with an answer to a hypothetical that did not align with the facts of the case before him.  And because it cannot be said in this case that the vocational expert's testimony "either is contradictory or responds to an inaccurate hypothetical," *id.*, the ALJ's reliance on that testimony does not warrant a remand.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's decision denying Mykhaylychenko's application for Social Security disability insurance benefits is AFFIRMED.

IT IS SO ORDERED.

DATED:  May 31, 2024, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 23-00483 MWJS-RT; *Tatyana Mykhaylychenko v. Martin O'Malley*; ORDER AFFIRMING
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY